IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDREW JAMES MCCRACKEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 20-1223-JLH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM ORDER

Plaintiff Andrew James McCracken appeals from an unfavorable decision of the Commissioner of the Social Security Administration[1] denying his application for Supplemental Security Income ("SSI") benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The parties have consented to entry of final judgment by the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). (D.I. 16.)

The parties filed cross-motions for summary judgment. (D.I. 17, 19.) For the reasons announced from the bench at the conclusion of the oral argument on October 29, 2021, the Court grants Plaintiff's motion and denies Defendant's motion.

I.  **LEGAL STANDARDS**

Courts review the Commissioner's factual findings for "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi was automatically substituted for former Commissioner of Social Security Andrew Saul when she succeeded him on July 9, 2021.

1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirsnak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014). In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if they would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v). The Third Circuit has previously explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations. In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity. If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. The claimant bears the burden of demonstrating an inability to return to his past relevant work. If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual

>functional capacity.  The ALJ must analyze the cumulative effect of
>all the claimant's impairments in determining whether he is capable
>of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## II.    DISCUSSION

The decision of the Court was announced from the bench at the conclusion of the hearing as follows:

> Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied.
>
> Plaintiff argues that the ALJ erred at step four by failing to formulate Plaintiff's RFC to adequately account for limitations caused by Plaintiff's severe migraines.  I agree that the case should be remanded for further consideration of the limiting effects of Plaintiff's migraine headaches and whether his headaches, in combination with his other impairments, require including limitations in the RFC for absenteeism or time off-task.
>
> The ALJ found that Plaintiff has a medically determinable impairment of migraine headaches that could reasonably be expected to cause the symptoms he alleged.  However, the ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence of record.[2]
>
> The record reflects that Plaintiff began complaining of migraine symptoms at least as early as September 27, 2016.[3]  An MRI on October 25, 2016 showed foci of increased signal in Plaintiff's brain, which is consistent with migraines.[4]  Plaintiff attended at least 44 medical appointments between July 18, 2011 and November 3, 2017, where Dr. Gregory Adams, his treating

---

[2] *See* 20 C.F.R. § 416.929.

[3] (Transcript of Social Security Proceedings, D.I. 12–14 ("Record" or "R."), at 622.)

[4] (R. at 534.)

physician, and other treating doctors did not report observations of debilitating migraines. Many of those appointments do not appear principally related to Plaintiff's headaches, so it's not clear from the record whether the doctors performed any assessments for migraine signs or symptoms at each of those appointments. However, Plaintiff did report migraine symptoms at several of the later appointments. Several doctors suggested that Plaintiff's overuse of medications could be causing rebound headaches that contributed to the severity of Plaintiff's migraines.[5]

On May 25, 2017, Dr. Adams examined Plaintiff and opined that Plaintiff suffered from severe migraines.[6] Dr. Adams's opinion was that, although Plaintiff was able to perform household activities, he was unable to hold gainful employment. After several visits between May 2018 and September 2019, on September 3, 2019, Dr. Barnett-Smith, Plaintiff's primary care provider, opined that he would need frequent breaks and multiple absences from work because of her observation of his "severe migraines and chronic pain."[7] On April 2, 2019, Susan Stewart, NP, a treating specialist, filled out an assessment of Plaintiff's condition where she opined that Plaintiff was sensitive to light and noise and would need unscheduled breaks about every three to four hours and would miss about one day of work per week.[8]

Two consulting physicians in December 2017 and April 2018 noted that there was "no objective evidence to corroborate claimant's statements" about the severity of his migraine symptoms.[9] One of the consulting physicians suggested that Plaintiff "appear[ed] capable of a medium RFC with environmental limitations."[10]

Plaintiff continued to seek treatment from various physicians and specialists and take prescribed medications, including several different trials. At the hearing before the ALJ in this case, Plaintiff

---

[5] (R. at 534–36, 801, 806–07, 971.)

[6] (R. at 841–42.)

[7] (R. at 847, 1214.)

[8] (R. at 999–1004.)

[9] (R. at 92, 108–10, 128–30, 149.)

[10] (R. at 92.)

testified that he had 12 to 14 migraines per month for hours or days at a time.[11] Plaintiff described his migraines as so debilitating he has to lie down alone in the dark until they pass.

After determining that Plaintiff had medically determinable migraines that could reasonably be expected to cause the alleged pain symptoms, the ALJ considered both the objective evidence and other evidence in the record to determine the intensity, persistence, and effect of Plaintiff's pain.[12] The ALJ concluded that Plaintiff's treating doctors were not persuasive because they may have relied extensively on self-reported symptoms and that Plaintiff's migraines were much less debilitating than he described.[13] From this conclusion, the ALJ formulated an RFC that limited Plaintiff's exposure to light, sound, and hazards to accommodate his migraines but otherwise ruled, essentially, that he should be able to work through his pain.[14]

As an initial matter, I find no error in the ALJ's determination that NP Stewart's opinion was of limited persuasive power because it appeared to substantially rely on Plaintiff's self-reported symptoms rather than objective medical findings.[15]

That said, it is undisputed that Plaintiff does suffer from migraines. The ALJ stated that she took Plaintiff's migraines into account in formulating the RFC, which limited Plaintiff's exposure to lights no brighter than a typical office lighting level and noise no louder than a typical office level. But there is no substantial evidence to support a finding that the particular noise and light restrictions adopted by the ALJ would prevent Plaintiff from having multiple migraine headaches per month or would alleviate his

---

[11] (R. at 19–20, 60–61.)

[12] R. at 20–26; 20 C.F.R. § 416.929(c).

[13] (R. at 20–26.)

[14] (R. at 19, 24–25.)

[15] (R. at 23–24.) Under current regulations, the ALJ need not give the treating specialist controlling weight but instead must consider several factors including how relevant the supporting objective medical evidence is to the medical opinion and how consistent the medical opinion is with evidence from other medical sources. 20 C.F.R. 416.920c(c).

symptoms such that he could perform light work when he does have them.[16]

As for the frequency and intensity of Plaintiff's migraines, the ALJ discounted Plaintiff's testimony that he suffered multiple debilitating migraines per month because the records of doctors' visits suggested that he showed up for his appointments and was not obviously impaired at the visits.[17] But Plaintiff is not alleging that he is debilitated all the time.[18] The fact that he is not debilitated all of the time is not substantial evidence that he is not debilitated some of the time. Moreover, nothing in the record suggests that patients suffering from frequent intermittent migraines are unlikely to attend doctor's appointments between migraines.

The Commissioner argues that there is no evidence [Plaintiff] rescheduled or cancelled appointments.[19] But the ALJ did not point to the absence of evidence of appointment cancellations to support her decision. Moreover, the absence of evidence is not evidence of absence. On this record, it is unclear to me that there is substantial evidence to enable a finding that Plaintiff's appointment attendance meant that he didn't suffer from debilitating migraines some of the time. The ability to sporadically attend appointments does not necessarily suggest the ability to work without absence or interruption.

The ALJ appeared to suggest that Plaintiff's migraines would be reduced in frequency or so mild he could work through them if he reduced his use of fast-acting medication.[20] However, I agree with Plaintiff that there is not substantial evidence in this record to support that conclusion.[21]

---

[16] *See Overcash v. Saul*, No. 19-737, 2020 WL 1083787, at *14 (D. Del. Mar. 6, 2020), *adopted*, 2020 WL 3893032 (D. Del. July 10, 2020) (remanding where "the ALJ fail[ed] to explain the nexus, if any, between environmental limitations and migraine headaches").

[17] (R. at 23–26.)

[18] (R. at 60–61.)

[19] (D.I. 20 at 14.)

[20] (R. at 23–24.)

[21] The Commissioner acknowledges that Plaintiff's doctors never "prescribed" that he should stop taking Tramadol, or other immediate-acting medications, within the meaning of 20 C.F.R. § 416.930. (Tr. 25:13–23.)

When the findings unsupported by substantial evidence are disregarded, what remains is Plaintiff's history of repeatedly seeking treatment and receiving medications for his headaches, the opinions of Plaintiff's physicians that his migraines were so severe he could not work, and Plaintiff's own testimony about his debilitating migraines. While the ALJ is free to reject a claimant's subjective complaints of pain based on inconsistencies in the evidence, there is not substantial evidence of an inconsistency here.[22]

In sum, the determination that the RFC need not include limitations for time off task or absenteeism is not supported by substantial evidence articulated by the ALJ. The Commissioner's decision is vacated, and the matter is remanded back to the Commissioner in accordance with [the fourth sentence of] 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. On remand, the Commissioner should give further consideration to the evidence that Plaintiff is unable to perform light work when he is suffering from a migraine and explain the weight given to such evidence.

### III.   CONCLUSION

Plaintiff's motion for summary judgment (D.I. 17) is GRANTED and Defendant's motion for summary judgment (D.I. 19) is DENIED.

The Clerk of Court is directed to enter judgment in favor of Plaintiff, remand the action in accordance with sentence four of 42 U.S.C. § 405(g), and CLOSE the case.

Dated: December 27, 2021

The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE

---

[22] 20 C.F.R. § 404.1529(c)(2), (3).